# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE                                    )
                                         )        **Case No. 09-00645-TLM**
**DAVID G. ROOT and**                    )
**HELEN L. ROOT**                        )
                                         )        **Chapter 11**
                        **Debtors.**     )
_____          )

## MEMORANDUM OF DECISION
_____

This matter comes before the Court on the issue of confirmation of the

Amended Chapter 11 Plan of Reorganization, Doc. No. 151 ("Plan") of the

debtors in possession, David and Helen Root ("Debtors").  Having analyzed the

record, the Court determines that confirmation will be denied for Debtors' failure

to establish their Plan satisfies the confirmation requirements of § 1129(a) and

(b).[1]  This Memorandum of Decision constitutes the Court's findings of fact and

conclusions of law under Rules 9014 and 7052.

## BACKGROUND AND FACTS

Debtors' case commenced with a voluntary petition on March 18, 2009.

The petition noted the existence of a pending related case, *In re Roots Rents Inc.*,

---

[1]  Unless otherwise indicated, all statutory references including those to chapter and section are to the Bankruptcy Code, Title 11, U.S. Code §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 1

Case No. 08-01956-TLM.  Debtors are the principals of Roots Rents, an entity that rents and sells a variety of equipment and supplies.  Debtors' need for reorganization stems largely from obligations related to the business including personal guarantees and cross-collateralized debts.

The 2008 Roots Rents case was dismissed on October 29, 2009, based on a failure to comply with Code requirements governing filing and confirmation of a plan by a "small business debtor."  *See* Case No. 08-01956-TLM at Doc. Nos. 181, 182.  On November 5, 2009, Roots Rents filed another chapter 11 case, No. 09-03444-TLM.  A plan was eventually confirmed in the second chapter 11 case in January 2011.  *See* Case No. 09-03444-TLM at Doc. No. 242.

After proceedings not directly relevant to this decision, Debtors and the United States Trustee ("UST") ultimately agreed Debtors would file a proposed plan by August 2011.  That deadline was then extended several times on Debtors' unopposed requests that were premised mostly on ongoing discussions to resolve differences with a primary creditor, Zions First National Bank ("Zions").  The Plan, Doc. No. 151, was filed on October 14, 2011.  Following litigation under § 1125, Debtors' disclosure statement, Doc. No. 152, was approved in January 2012, and the Plan was scheduled for a confirmation hearing on March 19, 2012. *See* Order, Doc. No. 163.

Zions objected to confirmation of the Plan, Doc. No. 175, and submitted a

MEMORANDUM OF DECISION - 2

ballot rejecting the Plan. Debtor filed a summary and analysis of all creditor

ballots as required under LBR 3018.1. *See* Doc. No. 176 ("Ballot Summary").

However, Debtor failed to file the preconfirmation report and analysis of the

requirements of confirmation as required by LBR 3020.1.[2]

At the hearing on confirmation, counsel for Debtors and for Zions

presented arguments primarily focusing on the incorporation of, or alteration to,

underlying contractual terms that governed the existence, declaration and

enforcement of defaults of the obligations being restructured under the Plan, and

on the confirmation standards under § 1129(b)(1) and (b)(2)(A) as related to

Zions.

On March 28, 2012, the Court ruled that "the issues [were] not sufficiently

formed, nor the record sufficiently developed, to allow for a determination as to

whether Debtors' plan is confirmable." *See* Summary Order, Doc. No. 181. It

noted the absence of the required preconfirmation report, the absence of any

briefing or other materials in support of confirmation and the suggested treatment

---

[2] That Local Rule, entitled "Chapter 11 Preconfirmation Reports," provides:

In a chapter 11 case, the plan proponent shall, not less than five (5) days
prior to the confirmation hearing, file a memorandum containing the proponent's
response to any objections, and a statement as to how each requirement of § 1129
is satisfied. The memorandum shall be served on the debtor, the United States
Trustee, any committee appointed pursuant to the Bankruptcy Code or their
authorized agents, and any party that has filed an objection to confirmation or has
requested notice. If the confirmation hearing is continued, a revised preconfirmation
report shall likewise be filed and served not less than five (5) days prior to the
continued hearing.

MEMORANDUM OF DECISION - 3

of Zions, and the absence of any evidence.  The Court required the parties to

reschedule a confirmation hearing in order to present a complete record, and to file

briefs and disclose their witnesses and exhibits prior to such hearing.  The Court

also specifically required Debtors to file a preconfirmation report—even if

Debtors and Zions negotiated a resolution to their disputes.  *Id.*

Several months passed.  In early August, Debtors presented the Court with

a proposed order confirming the Plan, which provided that the Plan's treatment of

Zions would be deleted and replaced with that set out in the order.  Both the UST

and Zions' counsel endorsed the proposed order.  Debtors did not file the

preconfirmation report as previously ordered.[3]  In an August 3 summary order, the

Court required Debtors to file the rule-required and previously ordered

preconfirmation report.  Doc. No. 192.  On August 16, Debtors filed a "Pre-

Confirmation Statement," Doc. No. 193 (the "Report").

Debtors' Report contends that each and every requirement of § 1129 is met

and that confirmation of the Plan is proper, incorporating the Ballot Summary in

support of those contentions.  The Court concludes, however, that the record

establishes the requirements of the Code are not met and confirmation would be

---

[3]  Debtors also failed to file anything addressing the modification of the Plan treatment of
Zions or the change from rejection to acceptance it engendered.  *See* Fed. R. Bankr. P. 3018(a)
(allowing change of ballot for cause), Rule 3019(a) (addressing preconfirmation modification of
plan).  Since denial of confirmation is based on reasons other than those related to the proposed
modification, the Court will not comment further on it.

MEMORANDUM OF DECISION - 4

improper.[4]

## DISCUSSION AND DISPOSITION

The plan's proponent bears the burden of proving by a preponderance of the evidence that all the requirements for confirmation of a chapter 11 plan are met. *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1214 n.5 (9th Cir. 1994) ("The burden of proposing a plan that satisfies the requirements of the Code always falls on the party proposing it, but it falls particularly heavily on the debtor-in-possession or trustee since they stand in a fiduciary relationship to the estate's creditors."). This requires proof either that the plan meets all requirements of § 1129(a) or, if the only § 1129(a) requirement not satisfied is § 1129(a)(8), that the plan satisfies the cramdown alternative of § 1129(b). *In re Smitty Inv. Grp., LLC*, 2008 WL 2095523, at *4 (Bankr. D. Idaho 2008) (citing *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 653 (9th Cir. 1997); *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648, 654 (9th Cir. BAP 1994)).

The Court need not in this Decision address each of the elements for confirmation required under or implicated by § 1129. The Plan fails to satisfy § 1129(a)(8), and Debtors have not established the Plan meets the alternative

---

[4] The March 28 Summary Order required a hearing. The August 3 Summary Order indicated that the Court might be willing to waive the hearing requirement depending on the additional submissions made. Given the record and unresolved issues, as discussed in this Decision, the Court concludes a hearing at this time would be useless.

MEMORANDUM OF DECISION - 5

requirements of § 1129(b) as to each impaired and nonaccepting class.  Further,

the Plan does not address the claims of four secured creditors.  Thus it cannot be

confirmed.

### A.   Did each of the designated impaired classes accept the Plan?

Among the confirmation requirements is that of § 1129(a)(8) which

provides that, "[w]ith respect to each class of claims or interests—  (A) such class

has accepted the plan; or (B) such class is not impaired under the plan."

Whether a class has accepted the plan is governed by § 1126.  Section

1126(c) states:

> A class of claims has accepted a plan if such plan has been accepted by
> creditors, other than any entity designated under subsection (e) of this
> section, that hold at least two-thirds in amount and more than one-half
> in number of the allowed claims of such class held by creditors, other
> than any entity designated under subsection (e) of this section, that
> have accepted or rejected such plan.[5]

What this requires—and in the Court's experience what many plan proponents fail

to grasp—is that an actual acceptance, *i.e.*, an accepting ballot, is essential for a

single-creditor secured class.  Debtors' Report suggests that § 1129(a)(8) has been

satisfied because "[a]ll classes of creditors *which voted* accepted the plan."  *See*

Doc. No. 193 at 1, 2 (emphasis added).  This is sophistic; § 1129(a)(8) requires

---

[5]  Subsection (e) deals with designation of entities whose acceptance or rejection of a
plan was not solicited or procured in good faith or in accord with the Code.  That subsection does
not appear to be implicated here.

MEMORANDUM OF DECISION - 6

*each* impaired class to accept the plan.

A single-creditor class does not accept the plan if the creditor in it fails to submit a ballot at all.  In effect, classes cannot be "deemed" to have accepted by silence.  As stated in *Bell Road Inv. Co. v. M. Long Arabians (In re M. Long Arabians)*, 103 B.R. 211, 215 (9th Cir. BAP 1989), "the failure or inability of a creditor to vote on confirmation of a plan is not equivalent to acceptance of the plan."  The Panel there continued:

> The holder of a claim must affirmatively accept the plan.  11 U.S.C. § 1126(c).  Since Bell Road, the only Class C claim holder, did not vote affirmatively to accept the debtor's Plan . . . Class C could not have voted to accept the Plan [and] the bankruptcy court erred in holding that Class C accepted the Plan.

*Id.* at 216.  *See also In re Wegscheid*, 361 B.R. 144, 148 n. 16 (Bankr. D. Ariz. 2007) ("[A] failure to submit a ballot or to object is not regarded as an acceptance of a Chapter 11 plan in the Ninth Circuit.") (citing *M. Long Arabians*, 103 B.R. 211); *see generally* 7 Collier on Bankruptcy (Alan N. Resnick and Henry J. Sommer, eds., 16th ed., 2009) at ¶ 1129.02[8], p. 1129-42 ("[E]ach impaired class must have affirmatively accepted the plan."), and at ¶ 1126.04, p. 1126-14 ("[O]nly creditors that actually voted count in determining whether the requisite majorities in number and amount are met. . . . The failure or inability of a creditor

MEMORANDUM OF DECISION - 7

to vote on a plan is not the equivalent of the acceptance of the plan.").[6]

This approach to the requirements of § 1129(a)(8) and § 1126(c) has been previously articulated in this District. Given the contrary approach taken by Debtors in this case, and several other chapter 11 debtors in recent cases, it apparently bears repeating. This Court previously stated:

> Each of these classes is impaired. Thus, they must affirmatively accept the Plan under § 1129(a)(8)(A) or Debtors will have to establish that the Plan is fair and equitable under § 1129(b) as to each impaired and nonaccepting class. . . . Classes 4, 6 and 8 did not submit ballots and, thus, did not affirmatively accept the plan. . . . The Court must evaluate the Plan's treatment of all classes which either rejected or failed to affirmatively accept the Plan.

*In re Martin*, 2003 WL 25273864 at *4 n.7 (Bankr. D. Idaho Feb. 28, 2003).

Debtors' Plan lists seven classes of creditors, and acknowledges that each class is impaired:

> Class 1: Secured Claim of Wells Fargo Home Mortgage - residence
> Class 2: Secured Claim of Jaguar Credit - 2004 Jaguar XTY
> Class 3: Secured Claim of U.S. Bank - F150
> Class 4: Secured Claims of Canyon County
> Class 5: Secured Claim of Zions Bank
> Class 6: Secured Claim of United Rentals Northwest, Inc.
> Class 7: General Unsecured Claims

Doc. No. 151 at 2. Thus, under § 1129(a)(8)(A), *each* of these impaired classes

---

[6] Both the BAP in *M. Long Arabians* and the Collier treatise note that a case, *In re Rubi-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988), holding inaction by a nonvoting single creditor class constituted an acceptance, was incorrectly decided.

MEMORANDUM OF DECISION - 8

must accept the Plan.

The class of unsecured creditors, Class 7, accepted the Plan. Debtors'
Ballot Summary, Doc. No. 178, notes that eight unsecured creditors timely voted
to accept the Plan and one unsecured creditor timely voted to reject the Plan.[7]
This meets § 1126(c)'s numerosity requirement. The Ballot Summary also
indicates the two-thirds in amount requirement of § 1126(c) was met. Class 7
accepted the Plan.[8]

The Ballot Summary reflects that two secured creditors voted—it identifies
"Financial Pacific Leasing" with a claim of $1,617.13 as accepting, and Zions as
rejecting. Zions' rejection has already been discussed above. Financial Pacific
Leasing is not the named creditor in any of the Plan's single secured creditor
classes.[9]

---

[7] Though it does not change the outcome of the balloting, one of the eight unsecured
creditors accepting the plan, Brown Rental, did not have a claim under either § 501 or § 1111(a),
violating § 1126(a). In addition, and equally immaterial to this analysis, the Ballot Summary also
notes an untimely unsecured creditor ballot which accepted the Plan.

[8] This satisfied the requirement of § 1129(a)(10), which requires that at least one class of
impaired creditors, not including insiders, accept the Plan. It also obviated consideration of
cramdown as to the unsecured creditors under § 1129(b)(2)(B) and the "absolute priority rule."
*See In Re Borton*, 2011 WL 5439285, *3–4 (Bankr. D. Idaho 2011) and cases cited therein; *but
see In re Friedman*, 466 B.R. 471 (9th Cir. BAP 2012).

[9] In fact, the Court cannot determine that this is a secured creditor at all. In scouring the
record, the Court finds a reference to this entity on a "supplement" to Debtors' disclosure
statement, reflecting a "N/P" [note payable] of $3,547.60, and a "N/P - Under Chapter 11" of
$1,617.13. Doc. No. 160-3 at 2, 3. This suggests, but the quality of Debtors' monthly operating
reports does not enable the Court to confirm, that the $1,617.13 is a post-petition obligation.
Debtors' schedules of pre-petition debt do show Financial Pacific Leasing as a nonpriority
(continued...)

MEMORANDUM OF DECISION - 9

Significantly, there were no acceptances by Classes 1, 2, 3, 4 and 6.

> **B.** **Was confirmation shown to be proper as to each designated,
> impaired, and non-accepting class?**

Because Classes 1, 2, 3, 4 and 6 are impaired and failed to accept the Plan,

Debtors are obligated to establish that confirmation is proper notwithstanding the

lack of acceptance. *See* § 1129(b)(1). Because each of these classes involves a

secured creditor, Debtors' must prove that the Plan is "fair and equitable" under

§ 1129(b)(2)(A). As the Supreme Court stated earlier this year:

> Generally, a bankruptcy court may confirm a Chapter 11 plan only if
> each class of creditors affected by the plan consents. See § 1129(a)(8).
> Section 1129(b) creates an exception to that general rule, permitting
> confirmation of nonconsensual plans—commonly known as
> "cramdown" plans—if "the plan does not discriminate unfairly, and is
> fair and equitable, with respect to each class of claims or interests that
> is impaired under, and has not accepted, the plan." Section
> 1129(b)(2)(A) . . . establishes criteria for determining whether a
> cramdown plan is "fair and equitable" with respect to secured claim
> like the Bank's.

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, __ U.S. __, 132 S.Ct. 2065,

2069 (2012).[10]

---

[9](...continued)
*un*secured creditor in the amount of $3,176.49 based on a 2003 personal guarantee of a Roots
Rents obligation. Doc. No. 21 at 31. The Court could not locate a proof of claim filed by this
creditor. The ballot filed by the creditor, *see* Doc. No. 177 at 12–13, marks the same as "secured"
but provides no information other than the indicated amount owed and an account number
(#0296667-001). The Court concludes that Debtors relied on the creditor's assertion of the nature
of the claim in categorizing it as a "secured" creditor acceptance in their Ballot Summary, Doc.
No. 178, rather than relying on any of their or Roots Rents' records.

[10]  Section 1129(b)(2)(A) provides three approaches: "Under clause (i), the secured
(continued...)

MEMORANDUM OF DECISION - 10

Because of Debtors' apparent misunderstanding of the requirements of

§ 1126(c) and § 1129(a)(8), they made no attempt to establish § 1129(b)(2)(A)

was met as to the nonaccepting Classes 1, 2, 3, 4 and 6.  Under other

circumstances, this Court might be inclined to allow further opportunity for

Debtors to make that showing at a hearing.  However, other impediments to

confirmation exist.

### C.    Are all creditors appropriately classified and treated?

As noted, Debtors identified six secured creditors, placing each in a

separate class.[11]  However, that Debtors addressed *all* their secured creditors is not

established by the record.

In a chapter 11 case, "a proof of claim is deemed filed" for claims listed in

the schedules filed by the debtor, unless the claim is listed as disputed, contingent,

or unliquidated.  *See* § 1111(a).  Those creditors need not file proofs of claim

because the same are "deemed filed."  Fed. R. Bankr. P. 3003(b).  As Rule

3003(b) further clarifies, in a chapter 9 or 11 case, the scheduled claims are "prima

---

[10] (...continued)
creditor retains its lien on the property and receives deferred cash payments.  Under clause (ii),
the property is sold free and clear of the lien, 'subject to section 363(k),' and the creditor receives
a lien on the proceeds of the sale. . . . Finally, under clause (iii), the plan provides the secured
creditor with the 'indubitable equivalent' of its claim."  *Id.* at 2070.

[11]  "[A]s a general rule each holder of an allowed claim secured by a security interest in
specific property of the debtor should be placed in a separate class."  7 Collier on Bankruptcy
¶ 1122.03[3][c], at p. 1122-15; *see* § 1122(a) (requiring that, with the exception of impaired
unsecured claims, "a plan may place a claim or an interest in a particular class only if such claim
or interest is substantially similar to the other claims or interests of such class.").

MEMORANDUM OF DECISION - 11

facie evidence of the validity and amount" of the creditors' claims, unless they are listed as disputed, contingent or unliquidated.[12]

Under Rule 3003(c)(1), any creditor may file a proof of claim.  Thus, a creditor whose claim was "deemed filed" under § 1111(a) because of how it was listed in the schedules can trump the debtor's assertion by filing a proof of claim. Those creditors who do not have the benefit of the "deemed filed" claim must file a timely proof of claim or lose their status as creditor on that claim.  Rule 3003(c)(2).  Rule 3003(c)(3) requires the Court to set a deadline for filing claims. In this District, LBR 3003.1(a) sets that deadline ninety days from the first date set for the § 341(a) meeting of creditors in all chapter 11 cases for non-governmental creditors.[13]

Here, Debtors scheduled three secured creditors as holding claims that were *not* disputed, contingent or unliquidated, thus triggering § 1111(a) and Rule 3003(b).  They were: Wells Fargo Home Mortgage on Debtors' residence, Jaguar Credit on a 2004 Jaguar XTY sedan, and Zions as to a claim secured by deeds of trust on real property at 103 Northside Blvd., Nampa, Idaho and at 2602 Cleveland

---

[12]   The effect of Rule 3003(b) as to these scheduled undisputed, non-contingent, and liquidated claims is therefore similar to that accorded filed claims.  *See* Rule 3001(f).

[13]   For governmental units, the deadline is 180 days from the first date set for the § 341(a) meeting of creditors.  *Id.*

MEMORANDUM OF DECISION - 12

Blvd., Caldwell, Idaho.[14]  Doc. No. 21 at 12–13.

Jaguar Credit filed a superceding proof of claim on its § 1111(a) claim.

Claim 21-1.[15]  Wells Fargo Home Mortgage filed a superceding proof of claim as

well.  Claim 25-1.  Debtors addressed these claims in the Plan as Classes 1 (Wells

Fargo Home Mortgage), 2 (Jaguar Credit) and 5 (Zions).

The schedules listed four "disputed" secured creditors: Puget Sound

Leasing Co. on a lease secured by 1994 Ford tractor; US Bank on a loan secured

by a Ford F-150; and two other Zions obligations.  Doc. No. 21 at 12–13.  Under

Rule 3003(c)(2), these creditors—and any other secured creditor not scheduled—

had to file a proof of claim.  The deadline for nongovernmental creditors to do so

under LBR 3003.1(a) was July 16, 2009.  *See* Doc. No. 13 (notice to creditors,

including date of § 341(a) meeting and claim bar deadlines).

US Bank filed a proof of claim, No. 26-1, of $3,321.67 on May 6, 2009 on

the "disputed" Ford F-150 obligation.  The Plan treats this claim in Class 3.  Zions

filed proofs of claim, Nos. 38-1 and 39-1, for $406,430.52 and $149,873.19

respectively, on the two disputed claims on July 15, 2009.  The Plan addressed

---

[14]  Though not scheduling Zions' claim as disputed, contingent or unliquidated, Debtors did assert it reflected "potential personal liability on corporate obligation."  *Id.* at 13.  The real property security in question, however, was listed on Debtors' schedule A.  *Id.* at 3.

[15]  Jaguar Credit filed another proof of claim, No. 42-1, on October 20, 2009, after the claim bar date.  Although no party objected to that claim, it appears to merely duplicate the prior proof of claim.

MEMORANDUM OF DECISION - 13

these claims in Class 5.

Puget Sound Leasing filed a secured claim, No. 16-1, on April 13, 2009, for $5,836.79. No objection was ever raised regarding this claim, and it is allowed. *See* § 502(a). Debtors did not provide for treatment of this claim in their Plan or otherwise address it.

The claims register of the Court for this case reflects that, while Debtors successfully objected to a number of secured claims that were filed, at least three remain. LEAF Funding, Inc. ("LEAF Funding") filed a secured claim, No. 33-1, for $57,797.04 on July 14, 2009. Debtors objected to that claim, but later withdrew their objection. Doc. Nos. 85, 94. Summit Leasing, Inc. filed a secured claim, No. 30-1, for $40,000 on June 19, 2009. Debtors objected to that claim, but later withdrew their objection. Doc. Nos. 83, 103. Leaf Financial Corporation ("Leaf Financial") filed a secured claim, No. 45, for $20,535.36 on April 6, 2010. No objection to the claim has been raised. The Plan fails to address the claims of LEAF Funding, Summit Leasing, and Leaf Financial, and they are not otherwise dealt with by Debtors.

As noted, Debtors are obligated to establish that their Plan complies with all applicable provisions of chapter 11 and title 11. *See* § 1129(a)(1), (2). The presence of four secured claims not treated under any provision of the Plan—Puget Sound Leasing, LEAF Funding, Summit Leasing and Leaf

MEMORANDUM OF DECISION - 14

Financial—raises a question as to compliance with this provision.  When coupled with the erroneous approach to determining Plan acceptances, and failure to establish satisfaction of § 1129(b) as to impaired, non-accepting classes, there is good reason to deny confirmation.  The Court will require an amended plan be filed, ballots solicited, and a confirmation hearing held.  In doing so, the modified treatment of Zions can also be made clear, and notice to creditors given, obviating the present issues under Rule 3019.

**CONCLUSION**

For the foregoing reasons, confirmation of the Plan will be denied.  The Court will enter an order accordingly.

DATED:  October 19, 2012



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 15